## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

**CIVIL ACTION NO. 08-62-JBC**

**WILLIAM HARRY MEECE,**                                                    **PETITIONER,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**THOMAS L. SIMPSON, Warden,**                                        **RESPONDENT.**

* * * * * * * * * *

This matter is before the court upon the request of the petitioner, William

Harry Meece, for a writ of habeas corpus (R. 1) and the respondent's subsequently

filed motion to dismiss (R. 11). The court referred this matter to the Honorable

James B. Todd, Magistrate Judge for the United States District Court for the

Eastern District of Kentucky, who issued a Report and Recommendation (R. 14).

The petitioner has filed objections to portions of the Magistrate Judge's report

(R.16). When the parties to an action submit such objections, the district court

reviews the record *de novo*. 28 U.S.C. § 636(b)(1)(c). The court, having reviewed

the record *de novo* in light of the objections and being otherwise sufficiently

advised, will grant the respondent's motion to dismiss the petition.

I.      **Background**

The evidence introduced at trial established the following facts. In late

October of 2002, Georgia Rhodes was distraught because she believed that her ex-

boyfriend, Robert Reilly, was acting in a threatening manner toward her. Meece, a

neighbor of Rhodes's daughter, witnessed her distress, asked her why she was so distressed, and then said, "I can take care of him for you."  Rhodes, upon encouragement from a friend, reported this offer to the police.  After meeting with a police officer, Rhodes agreed to be wired and talk with Meece in order to determine whether the offer to kill Reilly was a serious offer.  During their subsequent conversation, Meece said he was indeed serious, and he and Rhodes discussed the details of the transaction.  At a second meeting, for which Rhodes was again wired, she gave Meece $500.00, a physical description of the ex-boyfriend, and the fake name of "Danny Baker" instead of his true name.

On June 2, 2003, the jury found Meece guilty of Criminal Conspiracy to Commit Murder and recommended a sentence of twelve years.  On July 18, 2003, Meece was sentenced to twelve years.

Meece appealed his conviction to the Kentucky Court of Appeals, and on September 24, 2004, the Kentucky Court of Appeals affirmed his conviction and sentence.  A 91-97.  The Kentucky Supreme Court denied discretionary review.  A 90.

Meece then filed a post-conviction motion in the trial court pursuant to Kentucky Rule of Civil Procedure (CR) 60.02.  The trial court denied the motion on June 7, 2005, Meece appealed, and the Kentucky Court of Appeals affirmed the trial court's denial on March 24, 2006. A 84-89.  The Kentucky Supreme Court denied discretionary review. A 83.

Meece then filed another *pro se* post-conviction motion on December 28,

2005, this time pursuant to RCr 11.42. The trial court denied the motion, Meece

appealed, and the Kentucky Court of Appeals affirmed the denial.  A 2-15.  The

Supreme Court denied discretionary review, A1, and on February 11, 2008, Meece

filed the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2254.


II.    **Standard of Review**

Review of petitions for habeas corpus is governed by the Anti-terrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  28 U.S.C. §

2254(d) imposes the following standard of review that a federal court must utilize

when reviewing such applications:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of the statute, a federal court may grant relief

if the state courts, in affirming the conviction, either arrived at a conclusion

3

opposite to that reached by the United States Supreme Court on a question of federal constitutional law or decided the prisoner's case differently than the Supreme Court decided the same constitutional question on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause of the statute, relief is warranted if the state courts in affirming the conviction identify the correct governing principle of constitutional law from decisions of the United States Supreme Court but unreasonably apply that principle to the facts in the case. *Williams*, 529 U.S. at 407-08; *Campbell v. Coyle*, 260 F.3d 531 (6th Cir. 2001).  The key question in an "unreasonable application" analysis is whether the state-court decision was objectively unreasonable, not whether it was merely erroneous or incorrect. *Williams,* 529 U.S. at 409.  Further, "findings of fact made by a state court are presumed correct and can be contravened only where the habeas petitioner shows by clear and convincing evidence that the state court's factual findings were erroneous."  *Bugh v. Mitchell,* 329 F.3d 496, 500 (2003); 28 U.S.C. § 2254(e)(1).

"Clearly established federal law, as determined by the Supreme Court" of the United States is limited to the law established by U.S. Supreme Court cases. *See Herbert v. Billy*, 160 F.3d 111, 1135 (6th Cir. 1998).  It is further limited to the "holdings, as opposed to the dicta" of such decisions.  *Williams*, 529 U.S. at 412. The decisions of lower federal courts may be used by the court to determine how the U.S. Supreme Court law has been applied to "various fact situations" in order

4

to aid the court in "determin[ing] what is an 'objectively unreasonable application' of clearly established federal law." *Robertson v. Abramajtys*, 144 F.Supp. 2d 829, 836 n.4 (E.D. Mich. 2001) (citations omitted).


## III.    Petitioner's Claims

The petitioner asserts the following claims as grounds for his request for a writ of habeas corpus:  (1) the trial court failed to define "intoxication" for the jury; (2) appellate counsel was ineffective because she argued claims relating to "conspiracy of one" and "co-conspirator intent" rather than insufficiency of the evidence and because she argued for an "involuntary intoxication" instruction rather than an instruction on the definition of "intoxication"; (3) Commonwealth and Kentucky State Police withheld or destroyed taped statements and related reports; and (4) trial counsel was ineffective.

Meece has filed objections to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation.[1]  To the extent that Meece does not

---

[1]Meece also indicates in his objections that "[i]t should be noted petitioner is without a full copy of the record, as he is indigent, or even a copy of what the state provided this court as relevent [sic], as the state did not serve him copies." R. 16, p. 1.  Meece does not argue that the state court records were necessary to the preparation of his objections or actually request the record, so the court will proceed to rule on his objections.  Meece also objects to the Magistrate Judge's construing the respondent's reply as a motion to dismiss, alleging that by doing so, the Magistrate Judge shows bias in favor of the respondent.  This allegation is entirely without merit.  The Clerk of the Court docketed the Answer as a motion to dismiss, as is customary in habeas cases, and the matter was ripe for review on the merits.

specifically object to the report and recommendation, the court concurs in the results recommended by the Magistrate Judge. *Thomas v. Arn,* 474 U.S. 140 (1985).

A.    Trial Court's Failure to Give Certain Jury Instructions

The Magistrate Judge analyzed the petitioner's claim as being that the trial court failed to define "voluntary intoxication," as this was the claim raised by appellate counsel in the state courts.  In his objections, the petitioner argues that the Magistrate Judge's finding on this ground was incorrect but also argues that the trial court's error was its failure to include an instruction defining "intoxication."[2]  Meece's petition only raises the latter argument.  R.1, pg. 6. Given the confusion as to what instruction Meece believes he deserved, the court will address the lack of both instructions.

1.    *Lack of "Voluntary Intoxication" Instruction Does Not Entitle Petitioner to Relief*

_____

[2]These are separate instructions.  *See* WILLIAM S. COOPER, KENTUCKY INSTRUCTIONS TO JURIES (CRIMINAL) §§ 3.05, 3.06 (5th ed. 2007).  The definition of "intoxication" is based on KRS 501.010(2) ("Intoxication – Means a disturbance of mental or physical capacities resulting from the introduction of substances into the body.") while the definition of "voluntary intoxication" is based on KRS 501.010(4) ("Voluntary Intoxication–Means intoxication caused by substances which the Defendant knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know.").  Appellate counsel apparently considered the two instructions one and the same.

6

The Kentucky state courts have considered whether there was any error in the lack of a jury instruction on "voluntary intoxication."  Meece raised that argument in the direct appeal of his conviction, and the Kentucky Court of Appeals considered it and concluded that there was no error. *See* A 96.  The state court determined that the error was unpreserved, meaning that trial counsel did not object at trial, and therefore Meece was entitled to relief only if the alleged error "resulted in manifest injustice."  A 96.  The court noted that the jury had received a "separate instruction on intoxication with a directive that the jury not find Meece guilty if he was so intoxicated at the time of the offense that he could not form the required intent."  A 96.  The state court decided the issue on state-law grounds, citing *Holland v. Kentucky*, 114 S.W.3d 792 (2003), for the proposition that where there was no evidence to support involuntary intoxication as a defense, the defendant is not entitled to an instruction defining voluntary intoxication. A 96.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In order to furnish a ground for habeas relief, the defective jury instruction must impinge on a federal constitutional right.  A petitioner seeking habeas based on an alleged constitutional error from a jury instruction that quotes a state statute faces an "especially heavy" burden. *See Waddington v. Sarausad*, — U.S. —, —, 129 S.Ct. 823, 831 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction,

7

such an error does not necessarily constitute a due process violation." *Id.*  This court must determine whether the resulting decision was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings.  Although the state court referenced no federal law, its determination still must be consistent with federal law.

In order for an improper jury instruction to violate a defendant's right to due process, the defendant must show "both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.* (citations omitted).  When a court makes that assessment, "the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.'" *Id.* (citations omitted) (internal quotations omitted).  "[T]he pertinent question 'is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.''" *Id.* (citing *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973))).

The court concludes that the lack of a voluntary intoxication instruction did not result in a conviction that violated due process.  The lack of the instruction did not relieve the government of any of its burden.  There was simply no need for such an instruction – as the state court reasoned, the definition of voluntary

8

intoxication is not relevant where it was not needed to clarify the distinction between voluntary and involuntary intoxication.  The state court determined that there was absolutely no evidence presented that Meece was involuntarily intoxicated at the time of the offense – to the contrary, Meece himself had testified that he had been drinking alcohol.

2. *Lack of Definition of "Intoxication" in Instructions Does Not Entitle Petitioner to Relief*

The claim that the trial court erred when it failed to define "intoxication" was not presented to the state appellate court for review.[3]  The petitioner therefore has not exhausted his state remedies as to this potential ground for relief.

a. **Claim Procedurally Defaulted**

When a petitioner has not exhausted his state remedies, the federal court must determine whether the petition should be dismissed in order to allow for the petitioner to present the claim to state court.  *See Rhines v. Weber*, 544 U.S. 269, 275-76 (2005).  If the petitioner failed to present claims in state court but would now be procedurally barred from doing so, there is a procedural default for

_____

[3]His appellate counsel argued in her opening brief that a "voluntary intoxication" instruction was necessary, given Meece's "involuntary intoxication" defense.  *See* A 152-54.  In response the state pointed out that Meece had not raised an "involuntary intoxication" defense, but rather had testified to drinking alcohol.  *See* A 128.  In the reply brief, appellate counsel included a section heading mentioning the trial court's failure to provide an "adequate instruction on the definition of intoxication" but still referencing "voluntary intoxication" in the text of the reply. A 103.  A brief reference to an argument in a heading does not constitute squarely presenting the argument for the appellate court's review.

purposes of federal habeas.  *Coleman v. Thompson*, 501, U.S 722, 735 n.1

(1991); *Castille v. Peoples,* 489 U.S. 346, 351 (1989) ("requisite exhaustion may

nonetheless exist … if it is clear that [petitioner's] claims are now procedurally

barred under [state] law").

Here, it is clear that the petitioner would be procedurally barred from raising

the claim in the state courts.[4]  The respondent does not argue that the claim must

be dismissed for further action in the state courts.  "A petitioner may avoid . . .

procedural default only by showing that there was cause for the default and

prejudice resulting from the default, or that a miscarriage of justice will result from

enforcing the procedural default in the petitioner's case."  *Seymour v. Walker*, 224

F.3d 542, 550 (6th Cir .2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87

(1977)).  To establish prejudice, the petitioner must show that "the errors at trial

_____

[4]In Kentucky state courts, after direct appeal, a defendant may seek relief through filing a motion pursuant to either RCr 11.42 or CR 60.02.  Kentucky courts have consistently held that CR 60.02 is intended to provide relief "based upon claims of error that 'were unknown and could not have been known to the moving party by exercise of reasonable diligence and in time to have been otherwise presented to the court.'"  *Barnett v. Commonwealth*, 979 S.W.2d 98, 101 (Ky. 1998) (quoting *Young v. Edward Technology Group, Inc.*, 918 S.W.2d 229, 231 (Ky. Ct. App. 1995).  This claim of error would have been evident at the time of the petitioner's conviction.  A motion brought under RCr 11.42 must be brought within three years of a final judgment and "is limited to issues that were not and could not be raised on direct appeal."  *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006).  This issue could have been raised on direct appeal.  Nor would the claim be brought within the time frame provided by RCr 11.42.  Therefore, this court concludes that remand is unnecessary because the claim would be denied on procedural grounds.  It therefore will analyze this claim as a procedurally defaulted claim.

10

'worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (quoting *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

### b. Appellate Counsel's Failure to Argue Claim on Direct Appeal May Establish Good Cause for Procedural Default

The petitioner seeks to establish cause by arguing that his appellate counsel was ineffective. "[T]he ineffective assistance claim asserted as cause for the procedural default of a claim must not itself have been procedurally defaulted." *Ouellette v. McKee*, No. 05-89, 2008 WL 4376374, at *5 (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). "To constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Id.* (quoting *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Thus, "ironically," the court must consider the merits of the claim in order to determine whether cause exists for the petitioner's procedural default. *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003).

The petitioner did not present this claim to the Kentucky state courts. Kentucky state courts do not recognize a right to effective assistance of appellate counsel. *See Lewis v. Commonwealth*, 42 S.W. 3d 605, 614 (Ky. 2001) ("Ineffective assistance of appellate counsel is not a cognizable issue in this jurisdiction."); *see also Hicks v. Commonwealth*, 825 S.W.2d 280 (Ky. 1992) (finding post-conviction Rcr 11.42 motion not an option for raising claim of

11

ineffective assistance of appellate counsel).  Kentucky state law allows an offender

to seek reinstatement of his appeal where neglect of counsel has caused him to

lose his right to a non-frivolous appeal.  *See Commonwealth v. Wine*, 694 S.W.2d

689, 694 (Ky. 1985).

Here, that remedy was not available to the petitioner because his appeal was

fully briefed and processed and the judgment against him confirmed.  As "there is

an absence of State corrective process," it is appropriate for this court to review

the merits of the claim.  *See* 28 U.S.C. § 2254(b)(1)(B)(i); *York v. Chapman*, No.

07-144, 2008 WL 2168934, at *6 (W.D. Ky. May 23, 2008); *see also Morris v.

Motley*, 2007 WL 3171538 (6th Cir. Oct. 23, 2007) (concluding that where

determination of whether remedy of reinstatement of appeal was available to

petitioner involved complicated question of state law, federal court could move

directly to the merits of the petitioner's claim (citing *Lambrix v. Singletary*, 520

U.S. 518, 525 (1997)).

    c.    **Appellate Counsel Was Not Constitutionally Ineffective For Failing To
Argue Issue on Direct Appeal**

The Sixth Circuit applies the standard articulated in *Strickland v. Washington*,

466 U.S. 668 (1984) to analyze claims of ineffective assistance of appellate

counsel.  "To establish the ineffective assistance of appellate counsel, it must be

shown that counsel's performance was deficient and that the deficient performance

was prejudicial." *Ratliff v. U.S.*, 999 F.2d 1023, 26 (6th Cir. 1985) (citing

*Strickland*).

   The respondent argues that counsel was not deficient.  An indigent

defendant does not have a right "to compel appointed counsel to press non-

frivolous points requested by the client, if counsel, as a matter of professional

judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745

(1983).  Tactical choices regarding issues on appeal are properly left to the sound

judgment of counsel.  *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986).

   Here, appellate counsel's failure to argue this point cannot be described as a

"tactical choice."  Appellate counsel clearly made an error.  Rather than arguing

that it was error not to instruct the jury on the definition of "intoxication," counsel

argued it was error for the court not to instruct the jury as to the definition of

"voluntary intoxication."  *See* A 152-54.  There was no support in the record for a

claim that the trial court should have given an instruction on "voluntary

intoxication."  Kentucky case law clearly provides that the instruction on

"voluntary" intoxication is called for only when there is some showing that the

defendant may have been involuntarily intoxicated, so that it would be helpful for

the court to explain to the jury the difference between voluntary and involuntary

intoxication.  *See Holland v. Kentucky*, 114 S.W.3d 792 (2003).  Appellate counsel

should have been aware of this rule of Kentucky law, as she herself cites and

discusses *Holland* at length.  *See* A 152-54.  Appellate counsel's brief

13

demonstrates that counsel was at least confused as to the applicable jury instruction, not making a "tactical choice," and the brief thus weighs in favor of a finding of deficient performance.

However, the petitioner has made no showing that any deficiency in this regard was prejudicial, nor could he do so successfully.

The Kentucky state appellate court considered the merits of the underlying error. In his RCr motion, the petitioner argued that his trial counsel had been ineffective for numerous reasons.  One of the grounds alleged by the petitioner was trial counsel's failure to submit to the trial court an instruction defining intoxication. *See* A 12.  The Kentucky Court of Appeals applied the *Strickland v. Washington* standard to analyze whether trial counsel's performance was ineffective.[5]  466 U.S. 668 (1984).  The court agreed that trial counsel had committed an error.  *Id.* However, the court concluded that the error was harmless because there was not a "substantial possibility that the outcome of the case would have been different without the presence of that error."  A 14 (quoting *Thacker v. Commonwealth*, 194 S.W.3d 287, 291).  The court reasoned that the outcome of the case would not have been different because the jurors had heard several witnesses testify that Meece was intoxicated and were instructed as to Meece's intoxication defense.  A

---

[5]Under *Strickland*, to establish a violation of the Sixth Amendment, the petitioner must establish (1) that counsel's performance fell outside the wide range of professional competent assistance guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense so seriously that but for the alleged error of counsel, there is a reasonable probability that the result would have been different. *See Strickland*, 466 U.S. 668 (1984).

15.  These factual findings are entitled to a presumption of correctness.  *See* 28 U.S.C. § 2254(e)(2); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir.2001) (statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records).

Because trial counsel was not ineffective for failing to submit the instruction, it follows that the petitioner suffered no prejudice from appellate counsel's failure to challenge the petitioner's conviction based on that ground.  *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6h Cir. 2008); *see also Willis*, 351 F.3d at 745 ("[A]ppellate counsel cannot be ineffective for a failure to raise an issue that lacks merit").

Therefore, appellate counsel's failure to raise the issue properly on appeal does not rise to such a level that it establishes cause for purposes of overcoming the procedural default of the claim that trial court erred in not giving instruction on definition of intoxication.[6]

B.     Ineffective assistance of appellate counsel

Meece claims that his appellate counsel was ineffective for two reasons: (1) counsel "argued the 'conspiracy of one' as 'co-conspirator intent' rather than . . .

---

[6] The petitioner does not argue that he is entitled to review of the procedurally defaulted claim due to a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 537 (noting the Supreme Court has also recognized a "miscarriage-of-justice exception" to procedural default, which allows "prisoners asserting innocence as a gateway to defaulted claims [to] establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327)).

15

'insufficiency of the evidence'"; and (2) counsel "presented the question of intoxication definitions as one of 'voluntary' vs. 'involuntary' intoxication rather than the complete lack . . . of any definition of intoxication." R.1, p.8. The court has fully addressed the merits of the second reason above, *see* section III(A)(2)(b), *supra*. As to the first, in his objections, Meece specifies that appellate counsel was ineffective because she "sabotaged a claim of 'conspiracy of one' by pleading it as coconspirator intent, a losing argument as settled by law, rather than an issue of sufficiency of the evidence, a winning one." R. 16, p. 2.

Meece did not present this claim to the Kentucky appellate courts. However, as discussed above, it is appropriate for this court to review the petitioner's claim of "ineffective assistance of appellate counsel" on its merits.

The petitioner's claim lacks merit. Appellate counsel did argue that there was insufficient evidence on which to base a conviction. *See* Appellant's Reply Brief, A 101-102; Appellant's Brief A 147. Appellate counsel argued that "the evidence was insufficient to convict Meece because there was insufficient evidence of intent to commit a murder." A 147. The Magistrate Judge made this finding as well, and the petitioner's objections do not add any further information the court can use to understand the petitioner's point.

C.    Taxed Statements and Related Reports Withheld or Destroyed by the Commonwealth.[7]

---

[7]The respondent does not address this claim in his motion to dismiss.

Meece claims that the Commonwealth and the Kentucky State Police withheld or destroyed taped statements of the defendant and the police informant. According to Meece, this evidence is exculpatory and he has a right to all exculpatory evidence.

Meece cites no federal law in support of his claim.  The applicable federal law is *Brady v. Maryland*, 373 U.S. 83, 87 (1963).[8]  The petitioner neither attempts to show that the state's alleged withholding of evidence meets the standard of a *Brady* violation nor challenges the factual determinations or application of federal law by the state court.  Nor does the petitioner make any specific objection to the Magistrate Judge's recommendation as to this claim; rather, he repeats the allegations recounted in his petition.  The petitioner presented this claim to the state court via a post-conviction CR 60.02 motion.  The court finds the petitioner has provided no reason, pursuant to 28 U.S.C. § 2254(d), for this court to disturb the state court's ruling.

---

[8]"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Castleberry v. Brigano*, 349 F.3d 286, 291 (6th Cir. 2003) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, (1999)).  "Favorable evidence is material for Brady purposes 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682,(1985)).  "For purposes of determining reasonable probability, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

D.      Ineffective Assistance of Trial Counsel

Meece makes multiple claims of ineffective assistance of trial counsel.  In his petition, he argues that trial counsel was ineffective due to alleged failure: (1) to investigate the law of the case, including defenses; (2) to "investigate or contact witnesses;" (3) to "review and enhance recorded statements prior to trial;" (4) to "request withheld discoverable material in possession of the state;" (5) to tender instructions including the definition of the term "intoxication" as part of an intoxication instruction defense.

In his objections, he makes arguments relevant only to claims (1) and (2). The court therefore adopts the Magistrate Judge's findings and conclusions as to the remaining three claims.

Under *Strickland v. Washington*, to establish a violation of the Sixth Amendment, the petitioner must establish (1) that counsel's performance fell outside the wide range of professional competent assistance guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense so seriously that but for the alleged error of counsel, there is a reasonable probability that the result would have been different. 466 U.S. 668 (1984).


*1.      Failure to Investigate Law of the Case*

Meece claims that counsel was deficient because he argued at trial for a

18

defense of impossibility, when the law is clear that impossibility is no defense to a crime of conspiracy.

Meece presented this claim in his post-conviction RCr 11.42 motion. The state appellate court, reviewing the trial court's denial of the claim, applied *Strickland*. After citing *Strickland* and correctly stating its standard, the state appellate court analyzed Meece's claim as follows:

> Meece first alleges that he was denied effective assistance of counsel when his defense counsel argued an improper defense at his trial. Specifically, Meece alleges that his defense counsel's "factual impossibility" defense at trial was an invalid defense to a conspiracy to commit murder. Because defense counsel argued such a defense, Meece alleges that it is obvious that counsel did not adequately research and investigate his case. Thus, he alleges that he was denied a complete defense in violation of his constitutional rights.
>
> While Meece correctly contends that factual impossibility is not a defense to a conspiracy charge, it does not follow that counsel's arguing of this defense combined with other defenses resulted in the denial of Meece's right to effective assistance of counsel. During the trial, in addition to factual impossibility, Meece's counsel argued other defenses against the conspiracy charge, including the defense that Meece lacked the intent to commit the conspiracy. While this trial strategy did not result in Meece's acquittal, the function of appellate courts is not to second guess counsel's trial strategy. *Baze v. Commonwealth*, 23 S.W.3d 619, 624 (Ky. 2000). It appears that defense counsel put forth several defenses to the conspiracy charge, including one that was not legally viable. However, we fail to see how this error, in light of counsel's zealous advocation of other legally viable defenses, deprived Meece of effective assistance of counsel. *McQueen v. Commonwealth*, 949 S.W.2d 70, 71 (Ky.1977).

A 5-6.

Meece does not challenge the state appellate court's finding of fact that trial counsel argued other, viable defenses against the charge facing him. Meece only restates the argument he made to the state court: that by arguing a defense not

allowable by law, counsel was ineffective, due to obvious failure to research the law of the case.

Meece's argument goes only to whether counsel's performance was deficient.  "A habeas petitioner must first establish that counsel was 'deficient' by showing that counsel had committed errors so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Nix v. Whiteside*, 475 U.S. 157, 164-65 (1986) (quoting *Strickland*, 466 U.S. at 687)).

The state court's determination that counsel's performance was within the range of competent assistance was not unreasonable.  Counsel's inclusion of a defense was not such a serious error, as counsel also "zealously" argued that Meece lacked the requisite intent to commit the crime charged.  Furthermore, even if counsel's performance was deficient, Meece has made no attempt to show that he was prejudiced by it.

The court concludes that the state court's resolution of this claim is neither an unreasonable application of federal law nor based on an unreasonable factual determination given the evidence presented in the state court proceeding. Therefore, Meece is not entitled to relief based on this claim.

2.    *Failure to Investigate Witnesses*

Meece also claims that he received ineffective assistance of counsel because counsel failed to contact witnesses who would have aided his defense.  In his

20

objections to the Magistrate Judge's Recommendation, Meece specifies that in

particular counsel was ineffective for failing to secure the testimony of Devra

Rosen.  Meece asserts that Devra Rosen would have testified that Meece intended

only to take money from Rhodes and never intended to kill anyone, and further

states that she actually provided this testimony in another trial in Warren County,

Kentucky.  R. 16, p. 3.

Meece presented this claim to the state courts, and the state courts ruled its

merits.  The state appellate court analyzed the claim as follows:

> Meece next alleges that some of his witnesses were prepared to offer testimony regarding his lack of intent to agree to murder Baker. Specifically, he alleges that some of his witnesses were prepared to testify that he had told them that he only intended to "scam" Rhodes. Meece further alleges that these witnesses were prepared to testify that he planned to scam Rhodes because of his desperate financial condition. They would also testify that Meece's financial condition had been aggravated by his recent incarceration in county jail. While it is possible for trial counsel to call a litany of witnesses, trial strategy may dictate for reasons of credibility or to prevent a jury's misunderstanding of facts that certain witnesses are called to testify and others are not. *Foley v. Commonwealth*, 17 S.W.3d 878, 885 (Ky. 2000) (holding that decisions regarding witness selection are generally left to defense counsel's judgment and will not be second-guessed by hindsight), overruled on other grounds by *Stopher v. Conliffe*, 170 S.W.3d 307 (Ky. 2005). Meece's defense counsel called witnesses and cross-examined others in the putting on a defense, and we do not second-guess those choices from the lofty vantage point of hindsight. *Meadows v. Commonwealth*, 550 S.W.2d 511,513 (Ky. 1977).
>
> Moreover, Meece's list of purported witnesses was unaccompanied by a single affidavit. This is troubling because Meece's RCr 11.42 motion and his conviction are separated by two and a half years. This is more than enough time to bolster mere allegations. Additionally, Meece was appointed counsel to assist him in the presentation of his RCr 11.42. However, Meece's counsel's supplemental pleading did not provide any support for Meece's allegation concerning his witnesses.

Regardless, even if we assume, arguendo, that Meece's counsel's errors were so serious that his performance fell outside the wide range of professionally competent assistance, Meece has not demonstrated prejudice. Essentially, assuming Meece has satisfied prong one of Strickland, he has not satisfied prong two which requires proof that counsel's deficient performance prejudiced the defense so seriously that there was a reasonable likelihood that the outcome of the trial would have been different without the errors. *MacLaughlin, supra*. Our Supreme court has held that "(t)he critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Haight v. Commonwealth*, 41 S.W.3d 436,441 (Ky. 2001).

In this case, although some of his witnesses may have testified that he was only going to scam Rhodes and that he had serious financial problems after being released from jail, the prosecutor could have argued that the conspiracy was an act by a criminal desperate to earn a dollar, including by murder. Further, Meece accepted only a five hundred dollar ($500) advance payment to kill Baker and then informed Rhodes that he would send her a Polaroid picture after the murder was completed. If this was a scam, the prosecutor could surely argue that a scam artist would have taken a larger advance payment since his next payment would only come after a picture confirmed her boyfriend's murder which presumably would never arrive (i.e., Meece would never receive another dollar from Rhodes).

Additionally, when Meece was arrested, he was found in possession of the note that contained a description of Baker. Finally, the most detrimental evidence in this case were the taped recordings of Meece in which he lucidly laid out his plan for murder. Therefore, in light of the evidence in this case, including Meece's chilling audio recordings, Meece's purported witnesses' testimonies were not reasonably likely to have affected the outcome of this case as to provide Meece a probable victory. *Haight, supra*.

A 9-11.

Meece does not challenge the state appellate court's findings of fact.

Although he states that Rosen testified in another court proceeding, he still has

failed to submit her affidavit substantiating his claim that she would have testified

that he intended only to trick Rhodes out of her money.  This court concludes that

the state court's analysis is not contrary to, or an unreasonable application of, federal law.

## IV.   Certificate of Appealability

A Certificate of Appealability may be issued where "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a substantial showing is made when it is evident that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The court finds that reasonable jurists would not find debatable or wrong the correctness of the assessments made in this case; therefore, the court declines to issue a certificate of appealability.

## V.   Conclusion

Accordingly,

**IT IS ORDERED** that the Magistrate Judge's Report and Recommendation (R. 14) is **ADOPTED** as this court's opinion with the addition of the analysis set forth above.

**IT IS FURTHER ORDERED** that the respondent's motion to dismiss (R. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that petitioner's application for a writ of habeas corpus (R. 1) is **DENIED AND DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED,** as the petitioner has failed to make a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(1).

Signed on  March 31, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

24